IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RUSSELL FOUT,
    Plaintiff,
v.                                                                            Civil Action No 1:07CV108

MICHAEL J. ASTRUE,
Commissioner of Social Security,
        Defendant.

## OPINION/REPORT AND RECOMMENDATION

This matter comes on before the undersigned pursuant to 28 USC §636(b)(1)(B)and LRGenP 83.12. Plaintiff filed this action pursuant to 42 USC §405(g) for review of the final decision of the Commissioner of Social Security which denied his request for waiver of recovery of disability insurance benefits overpayment under Title II of the Social Security Act, 42 USC §401-433.

## Procedural History

Plaintiff, hereinafter referred to as "Fout" was awarded disability insurance benefits (DIB) based on his June 15, 1990 application. On September 19, 2005, the Social Security Administration issued a "Notice of Revised Decision" which informed Fout that Social Security had overpaid him $66,475.60. Fout disputed the overpayment claim and requested a hearing.

A hearing was held November 8, 2006. Fout proceeded without counsel after the ALJ advised him of his right to seek and retain counsel.

By written decision dated December 18, 2006 the ALJ found Fout "was at fault in causing or accepting the overpayment" and denied his waiver request. R. 17. Fout requested review by the Appeals Council. The Appeals Council denied Fout's request for review on May 8, 2007 making the ALJ's decision the final decision of the Commissioner. 20 CFR §404.981 (2007).

1

Fout thereafter commenced the within civil action. [D.E. 1]. The Commissioner filed his answer [D.E. 10] to Fout's complaint; the administrative record of the proceedings below; and its Motion For Summary Judgment. [D.E. 17]. Fout filed his responses on January 8, 2008 and April 4, 2008 respectively. [D.E. 14 and 20].

## Statement of Relevant Facts
## From The Administrative Record[1]

As a result of a diving accident, Fout was rendered quadriplegic. R. 234. After the accident, Fout earned a four (4) year degree in accounting. R. 234, 254-255.

After graduation from college in 1986, Fout worked for two years for First Federal Savings Bank in Cumberland, Maryland. R. 255. Thereafter, he worked for a disability group for about three months. R. 255. He worked for a time with a stainless company. R. 256. Then, Fout was on unemployment for about a year. R. 256.

In 1991 Fout became self-employed as an accountant. R. 254, 256. Social Security granted him a nine-month period of trial work to test his ability to work. The trial period ended January 1996. R. 252. Based on Social Security policy, at the end of his trial work period (January 1996 R. 252), if Fout was able to perform substantial gainful employment, his disability entitlement would end. However, under the policy, the month in which disability ended and the next two months are excluded from claims for refund because of the time required for Social Security to do the paperwork. R. 264. In Fout's case, it was determined that he had the ability to work as of January 1996. Accordingly, February, March and April 1996 were excluded from the refund calculations. R. 252.

---

[1]Almost none of the following facts gleaned by the undersigned from the administrative record were mentioned by the ALJ in his "Evaluation of the Evidence." R. 16 - 17.

While Fout admitted he understood Social Security's trial work policy as it was explained to him by the ALJ on pages 249-250 of the record, he described his <u>prior</u> understanding of that policy as "fuzzy." R. 257.

On June 27, 2005 Fout wrote Social Security challenging its claim, stating: "I send you a copy of my tax return each year. Each year I receive a letter from you saying that according to my financial records, I am entitled to a raise. Now, all of the sudden, I am told that I was not eligible clear back to 1997." R. 32. In response, Social Security wrote Fout June 28, 2005, stating: "When someone is self-employed, it is a little more complex than that of an individual who simply works. Since you have a one-person business, you are considered to automatically be performing significant services. There are three tests involved in developing Substantial Gainful Activity when a person is self-employed. They are BOTH significant services and substantial income, comparability, and worth of work We evaluate all three tests before making a decision." Social Security then requested a spread sheet showing "the amount of hours ... spent in your business for each month for the specified period." R. 33. Fout provided the requested information by spreadsheet on June 29, 2005. R. 33-Exhibit 6.

Social Security created its own spread sheet and determined that Fout was not eligible for benefits and claimed a refund. Fout then requested a hearing with an administrative law judge, stating again: "Each year, I supply to the Soc Sec Admin a copy of my tax return. Each year, not only have I qualified to receive further payments, but in many cases, have received a significant raise. If I am currently uneligible [sic] due to my income, that is fine. This should be the goal of Soc Sec. However, I do not feel that I should reimburse Soc Sec any significant amount." R. 60.

Notwithstanding that Fout stated he was a quadriplegic and needed "help getting dressed, exercising, filing, answering phones etc. and spent $8.00 per hour for two assistants 6 hours per day for such personal care and secretary services" [R. 76], the income tax returns submitted by Fout for 2003, 2002, 2001, 2000, 1999, and 1996 clearly show on their schedule "C's" that Fout did not deduct anything for secretarial "labor" costs in arriving at the net income on which the Social Security relied in determining his income was too great for him to continue to receive benefits. R. 76-171. The same is true with respect to Fout's 2004 tax return. R. 182-193. While the ALJ asked Fout during the administrative hearing if he had incurred expenses for equipment, the record of the hearing is void of any inquiry as to how Fout as a quadriplegic managed to perform the services of accounting to his clients without any labor costs for secretaries. The ALJ's decision is also void of any discussion of the inconsistency between Fout's claims for secretarial costs and his failure to include such costs as business expense deductions. If Fout did not claim business expense deductions for secretarial help or assistance on his tax returns, could that have been because he believed that by receiving benefits from SSA, he was not entitled to claim such deductions from his gross business earnings? The ALJ did not explore or discuss any of this in his decision.

On August 2, 2008 Fout wrote the Disability Entitlement Advocacy Program in Baltimore, Maryland seeking counsel to assist him in the Administrative Hearing. In the letter Fout again explained his position: "I am a quadriplegic. I am an Accountant and have my own business. Each year, I send a copy of my tax return to the Soc Sec Admin, and each year, my benefits have continued. I even receive raises and at times, an extra check for near $1,000.00. Now, I am told that I did not qualify since Feb 1999 and must return every nickel. I am unaware of my rights and feel that this is unreasonable." R. 202. The Advocacy Program was unable to assist Fout at the hearing.

Fout described his work load as being heavier during tax season (January, February, March and April). During that period he typically earned approximately $200.00 per week for more than 40 hours per week. R. 244, 255. The remainder of the year Fout did regular tax accounting services such as quarterly returns for businesses, individuals that might be self employed, and corporations. R. 257.

During the three (3) year period following April 1996, Fout continued working as an accountant. R. 258. During the trial period he did not stop work due to his disability condition. R. 258. He also continued to receive disability benefit payments during the entire period. R. 258.

In the Activity Report Fout completed in February 2004, he stated that he was gainfully employed in the months of January, February, March and April earning more than $200.00 per week for working more than 40 hours per week for each year back to January 1, 1998. R. 244. Fout mailed his reports annually to Social Security at the Petersburg, West Virginia office. R. 265. Fout never provided false information in his reports to Social Security. R. 265. Two months after submitting the February 2004 report, Social Security sent him a letter stating he was entitled to Social Security Benefits and that he would receive a raise to $2,956 per month. He continued to accept Social Security Benefit payments until he received notice in June 2005, that he had been overpaid by $66,475.60. R. 244-246. When the ALJ asked Fout: "And third, even though you continued to receive the money, did you know, or reasonably be expected to know that you may not be entitled to that money for those periods of time that you were earning as much as you've indicated on your tax return?" Fout responded: "I always thought that the issues were that - - the rules were based on your net income."

### ALJ's Decision

On December 18, 2006 ALJ George A. Mills III issued his decision. In his written decision ALJ Mills states that after becoming "entitled to disability benefits based on an application filed on June 15, 1990, Fout "had self employment income beginning in 1994." The ALJ also noted that Fout testified "he began working in his own accounting business in 1994" and that "[i]n September 2005, the claimant was notified that based on his earnings his 9 month trial work period ended in January 1996." From the record, the ALJ concluded that "[s]ince the claimant's benefits continued to be paid during his trial work period and extended period of eligibility, he was therefore overpaid $66,465.60." R. 16.

The ALJ also noted that Fout "testified that he believes he is entitled to Social Security Disability benefits because he is disabled" and "that he always reported his earnings to the Social Security Administration and that he did not submit any false information." R. 16.

Based on the foregoing findings, the ALJ concluded as to the first prong of the two prong test (fault):

> The undersigned finds the testimony of the <u>claimant to be generally credible</u>. In fact, while the Administrative Law Judge commends the claimant for operating his own business, the undersigned finds <u>it is impossible to believe</u> that the claimant <u>could not understand that his earnings would reduce the amount of disability benefits payable</u>. Therefore, giving the claimant the maximum benefit of the doubt, the undersigned Administrative Law Judge finds that the claimant was at fault with regard to causing or accepting the overpayment.

R. 16 (Emphasis added) As to the second prong of the test (defeating the purpose of the Act or being against equity or good conscience), the ALJ found that "claimant's income exceeds his expenses and that the claimant owns collections of sports cards, guns, and coins. In addition, during the hearing, the claimant testified regarding his $12,000.00 bank account balance." <u>Id.</u>

6

## Contentions of the Parties

Plaintiff:

Plaintiff contends that he provided the Commissioner with his tax returns; received notices that he was still eligible to receive benefits and received raises in annual benefits; remains disabled as a quadriplegic; had no reason to know that he was not entitled to benefits even though he worked as a self employed accountant; and therefore was not at fault in accepting the benefits paid to him by Social Security.

Defendant:

Defendant contends: Substantial Evidence Supports the Commissioner's Finding that Plaintiff was Not Without Fault in Causing or Accepting the Overpayment of DIB.

## Standard for Scope of Review

In reviewing an administrative finding of no disability the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)*(*quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit stated substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984)(quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1968)).

In reviewing the Commissioner's decision, the court must also consider whether the ALJ applied the proper standards of law: "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

"Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2nd Cir. 2002). *Accord* Rutherford v. Schweiker, 685 F.2d 60, 62 (2nd Cir. 1982) (emphasis added).

## **Discussion**

Pursuant to 42 USC §404(a), the Commissioner is authorized to recover overpayments made to any recipient in the following manner:

(a) Procedure for adjustment or recovery

**(1)** Whenever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Commissioner of Social Security, as follows:

> **(A)** With respect to payment to a person of more than the correct amount, the Commissioner of Social Security shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person, or shall obtain recovery by means of reduction in tax refunds based on notice to the Secretary of the Treasury as permitted under section 3720A of Title 31, or shall apply any combination of the foregoing.

However:
(b) In any case in which more than the correct amount of payment has been made,

8

there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience. In making for purposes of this subsection any determination of whether any individual is without fault, the Commissioner of Social Security shall specifically take into account any physical, mental, educational, or linguistic limitation such individual may have (including any lack of facility with the English language).

A claimant is not without fault for an overpayment if it resulted from:

1) An incorrect statement made by the individual which he knew or should have known to be incorrect; or

2) Failure to furnish information which he knew or should have known to be material; or

3) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect. 20 CFR § 404.507.

The burden of proving that he is "without fault" is on the claimant recipient. Viehman v. Schweiker, 679 F.2d 223, 227 (11th Cir. 1982); Rini v. Harris, 615 F.2d 625, 627 (5th Cir. 1980).

20 CFR § 404.510 provides that the claimant is considered without fault if either of the following circumstances is present:

(b) Reliance upon erroneous information from an official source within the [SSA] ... with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto....

(g) The continued issuance of benefit checks to him after he sent notice to the Administration of the event which caused or should have caused the deductions provided that such continued issuance of checks led him to believe in good faith that he was entitled to checks subsequently received....

(n) Failure to understand the deduction provisions of the Act or the occurrence of unusual or unavoidable circumstances the nature of which clearly shows that the individual was unaware of a violation of such deduction provisions."

Notwithstanding Fout's repeated assertion that he regularly supplied copies of his income tax returns to the SSA and that the SSA would notify him that his benefits were continuing and in many instances that he was going to receive a raise in benefits, the ALJ / Commissioner did not once mention 20 CFR § 404.510 or Fout's assertions. In addition to not even mentioning Fout's major

9

contention in his Decision, the ALJ did not explain or give any reason for this omission or why, if the statements were true and credible, the pro se defense was inapplicable. Because the ALJ does not mention the chief defense being asserted by Fout in his decision, he does not explain why the information supplied to Fout by the SSA was not erroneous or should not have been relied on by Fout.

**Credibility:**

The Commissioner argues that the sole issue for review in this case is whether substantial evidence supports the ALJ's credibility determination that Fout's assertion that he did not understand his disability payments were reduced or cut off due to his self employment as an accountant was not credible.

To construe the issue so narrowly ignores that the Court must first find that "the Commissioner's decision rests <u>on adequate findings</u>" before it makes a determination that the findings were supported by substantial evidence in the record. (Emphasis added). In the instant case, the Court finds the ALJ's findings are woefully inadequate.

There is no issue with respect to whether Fout made an incorrect statement which he knew or should have known to be incorrect to the Social Security Administration. He did not and there is no evidence that he did. Likewise, there is no evidence that Fout failed to furnish information which he knew or should have known to be material. Fout furnished copies of his income tax returns timely and there is no evidence that more was requested or required or what he supplied was not correct.

In any hearing to determine whether the recipient of disability benefits is "without fault" in

acceptance of overpayments so as to be entitled to a waiver, credibility determinations lay solely within the province of the trier of fact. The Fourth Circuit has held that: "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984) (citing Tyler v. Weinberger, 409 F.Supp. 776 (E.D.Va.1976)).

In Fout's case, the ALJ specifically concluded: "The undersigned finds the testimony of the claimant to be generally credible. In fact, while the Administrative Law Judge commends the claimant for operating his own business, the undersigned finds it is impossible to believe that the claimant could not understand that his earnings would reduce the amount of disability benefits payable. Therefore, giving the claimant the maximum benefit of the doubt, the undersigned Administrative Law Judge finds that the claimant was at fault with regard to causing or accepting the overpayment."

This finding by the ALJ is internally inconsistent. It leads the Court to the conclusion that on the one hand the ALJ believed Fout was credible but on the other hand didn't believe that Fout could not understand that his earnings would reduce the amount of his disability payments. This without explaining what factual findings in the record led him to the conclusion. In addition, the ALJ fails to explain how he could believe Fout to be credible and at the same time find him to be at fault.

The Commissioner would have the Court speculate on how the ALJ reached his conclusions, contending that it is obvious that the ALJ did not believe Fout's assertion that he did not understand his benefits were subject to reduction or cessation by virtue of his self employment as an accountant while he otherwise found the facts testified to by Fout to be credible. While the following evidence

11

from the record may support such a conclusion, the ALJ never outlined them as such:

1)  After the accident that rendered him a quadriplegic Fout earned a four (4) year degree in accounting. R. 234, 254-255.

2)  After graduation from college in 1986, Fout worked for two years for First Federal Savings Bank in Cumberland, Maryland. R. 255.

3)  Fout later worked for a disability group for about three months. R. 255.

4)  Fout then worked for a time with a stainless company. R. 256.

5)  Thereafter, Fout was on unemployment for about a year. R. 256.

6)  In 1991 Fout became self-employed as an accountant. R. 254, 256.

7)  During the first 4 months of each year Fout prepared client's tax returns and filings and during this period of time his work load is heavier (40 hours or more per week) than it is during the remainder of the year when he is performing bookkeeping type services for his clients and filling out and filing their quarterly tax returns. R. 244, 255 and 257.

While the Court could infer from the facts in the record that accounting work done by Fout necessarily involves working with the intricacies of the IRS Tax Code; forms; computer programs for preparation of tax returns; and the application of taxpayer provided financial information appropriately to the taxpayer's income tax filings, the ALJ did not draw such inferences from the facts to support his conclusion that he, the ALJ, did not believe Fout could have not known that his work and earnings as an accountant would have reduced or eliminated his right to receive disability payments from Social Security. In addition, the ALJ does not explain in his decision what, if any effect, Fout's stated understanding of the Social Security's trial work policy was "fuzzy" R. 257

12

when coupled with Fout's testimony in response to the ALJ's question: "And third, even though you continued to receive the money, did you know, or reasonably be expected to know that you may not be entitled to that money for those periods of time that you were earning as much as you've indicated on your tax return?" that "I [Fout] always thought that the issues were that - - the rules were based on your net income" (R. 265) had on the ALJ in reaching his conclusion.

The Court could make all of the above findings from the evidence in the record of this case but to do so substitutes this Court's judgment for that which is reserved by law to the Commissioner and his ALJ. Veino v. Barnhart, *supra* at 586.

This case is somewhat similar to Viehman, et al v. Schweiker, 679 F.2d 223 (11th Cir. 1982) wherein the Court of Appeals reversed and remanded the lower court's ruling upholding the ALJ's ruling because the Appellate Court could not determine whether the ALJ's ruling was based on a question of the sufficiency of the evidence presented by the claimant (claimant's evidence was insufficient to carry his burden of proof) or based on a credibility determination. In Fout's case the Court cannot determine what the ALJ's credibility determination meant. From the decision there is no way for the Court to know what the ALJ found credible about Fout and what he did not. While the ALJ did not request additional information from Fout, from his decision there is no way for this Court to evaluate what weight the ALJ gave to what evidence.

## **Recommended Decision**

For the foregoing reasons, the undersigned **RECOMMENDS** that the Commissioner's Motion For Summary Judgment (DE 17) be **DENIED**; that the Decision of the Commissioner be **REVERSED**; that this matter be **REMANDED** to the Commissioner for a new hearing; and that this matter be **DISMISSED** and stricken from the Court's docket.

Any party may, within ten days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 16th day of December, 2008.

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

.